UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHAWN PAUL HEDLIN, <br><br>            Petitioner, <br><br>      v. <br><br> RON BARNES, Warden, <br><br>            Respondent. | Case No. 13-CV-05128-LHK <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Shawn Paul Hedlin ("Petitioner"), a state prisoner, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1 ("Pet."). Petitioner asks this Court to vacate his conviction and sentence on two grounds: (1) that the prosecutor unconstitutionally struck jurors on the basis of race; (2) that Petitioner was denied a fair trial because the prosecutor engaged in prosecutorial misconduct by introducing gang evidence in violation of the state trial court's *in limine* rulings. *Id.* After considering the briefs and underlying record, the Court DENIES the petition.

## I. BACKGROUND

On the night of January 30, 2005, Petitioner and his brother forcibly entered an apartment

1

in San Francisco and shot three people, killing one. Petitioner is now serving two consecutive life sentences and a sentence of 50 years to life, plus 22 years for enhancements. *See People v. Hedlin*, 2010 WL 5384268 (Cal. Ct. App. Dec. 29, 2010) ("*Hedlin*"). Petitioner contends that his conviction and sentence should be set aside because (1) the prosecution unconstitutionally eliminated jurors on the basis of race; and (2) the prosecutor engaged in prosecutorial misconduct by introducing gang evidence in violation of the state trial court's *in limine* rulings.

### A. State Trial Court Proceedings

#### 1. Jury Selection Proceedings

During jury selection proceedings, the prosecutor used two of his preemptory challenges to strike the only two African-American prospective jurors: Mr. Parker, a priest, and Ms. Walker, a social worker. *Hedlin*, 2010 WL 5384268 at *5-6. After the prosecutor struck Mr. Parker and Ms. Walker, the defense counsel raised an objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), and *People v. Wheeler*, 22 Cal. 3d 258 (1978), claiming that the strikes were racially motivated. *Hedlin*, 2010 WL 5384268 at *6. The state trial court determined that the defense counsel had made a prima facie showing of racial discrimination, and asked the prosecutor to justify striking Mr. Parker and Ms. Walker. *Id.* The prosecution then stated:

> [W]e have a priest who is in the business of saving souls that works for convicts not victims, but people who have been charged with a crime or convicted of a crime in order to save their soul, who was excluded. If he was not African American, neither defense attorney would think twice about the prosecution excusing that person.
>
> The same situation exists as to Miss Walker. If she was not African American no defense attorney would reasonably credibly with a straight face argue with the prosecution getting rid of a juror like that, so touched by the criminal justice system, to have cousins who were victims of crimes, but also defendants of shootings and murder and attempted murder, as well as an uncle who is low and behold innocent in her mind and falsely convicted and having served 12 years in prison or jail or wherever he was, to then expect that she would be a fair and impartial juror to the prosecution. They would never make the argument with a straight face.

ECF No. 13-2 ("Transcript"), 341:25-342:17. The prosecution also pointed out that Ms. Walker was single, unmarried, and works with disabled people. *Id.* at 342:20-21. The prosecutor noted

2

Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

that Ms. Walker was struck for similar reasons that other jurors were struck. He stated:

> That doesn't make [Ms. Walker] a good prosecution witness for the same reason it didn't make Miss Wagner who is a teacher and out to help people, Miss Gegaregian who is a teacher that helps people. Mr. Parker falls into the same category. Miss Worthington who helps people, Miss MacKowski could also fall in that same category. . . . I don't need anyone that has any sympathy frankly for people generally or certainly who may find someone or find anything sympathetic about either one of these defendants. As for Miss Walker . . . I have enough doubt that she wouldn't be willing to believe police officers or the prosecution because of living in Bay View Hunters Point, which for the record is a gang infested violent section of San Francisco, where the police are challenged every day, they are shot at, they don't have the support of the community. . . . [M]aybe that would make her a good prosecution witness, but I have no reason to think that or believe that necessarily in a vacuum.

*Id.* at 342:22-343:25.

After considering the matter, the state trial court judge stated that "the Court holds all these lawyers in high esteem . . . I do not for a moment believe that [the prosecutor] had in any way, shape or form any . . . untoward motives seeking to exclude members of a cognizable group." *Id.* at 345:23-346:3. The state trial court judge then went on to note that "[Mr. Parker] indicated that he volunteered at the San Bruno jail . . . counseling, administering to defendants who are incarcerated there." *Id.* at 346:5-8. As to Ms. Walker, the state trial court judge noted that "there are a bevy of reasons why she might have been excused." *Id.* at 346:10-11.

**2. The Prosecutor's Opening Statement**

Before the trial, the prosecution moved to admit evidence that Petitioner, his brother, and the victims were all members of the Lomitas Park Locos, a local gang. ECF No. 7-5, 65-68 (People's Motion Regarding Introduction of Status as Gang Members). The prosecutor contended that the gang evidence was relevant to explain why certain victims were reluctant to testify. *Id.* The state trial court deferred its decision on whether to admit the evidence until witness testimony made "gang membership relevant." *Id.* at 73-74 (Minute Order). The state trial court excluded "other evidence of any other type of gang activity or membership either by the defendant or any witness" absent a further hearing on the relevance of the evidence. *Id.* The state trial court did not specify whether its order applied solely to evidence of the defendants' and witnesses' gang

3

membership, or whether its order applied to evidence of the victims' gang membership as well. *Id.*

Prior to opening statements, the state trial court judge instructed the jurors that "[y]ou must base the decisions you make on the facts and the law. . . . you must determine the facts from the evidence received in the trial and not from any other source." ECF No. 13-6 ("Transcript"), 199:11-14. In addition, the state trial court judge noted that "[a]n opening statement is not evidence." *Id.* at 203:19-20.

In his opening statement, the prosecutor made the following remarks:

> Good morning to everyone. They didn't execute the person they intended. You see, the target in the morning of January 31st, 2005, was a person by the name of Eduardo Zaparolli. Instead, they killed Gregorio Chicas on the way to get Mr. Zaparolli.
>
> At that time in January, Mr. Zaparolli was living with Mr. Chicas . . . in an apartment . . . in South San Francisco . . . . With them in the apartment were their two girlfriends. Eduardo Zaparolli's girlfriend, Nelia Lopez, Gregory Chicas' girlfriend was Jeanette Briones. . . . They are all living together in this apartment. They are all working and they all knew each other or somehow were involved with the local gang called the Lomitas Park Locos, it's a Sureño gang.
>
> Mr. Zaparolli and Mr. Chicas had been active, Mr. Chicas may have been getting a little old for it, Mr. Zaparolli not so much. So that night in January on the 31st, the early morning hours, a couple of things brought the Hedlin brothers to that apartment.
>
> You see not only did the four people inside the apartment know each other, all four of those people knew the Hedlin brothers and knew them quite well. Had met them, had been out with them, been in the streets, been in their homes, been in their family homes. The Hedlins had been in that apartment before.

*Id.* at 204:4-205:5.

After the opening statement, the Petitioner and his brother moved for a mistrial on the grounds that the prosecutor's reference to gang membership violated the court's *in limine* ruling. *Id.* at 224:8-19. According to the defendants, the prosecutor's opening statement implied that the defendants were gang members. *Id.* at 226:22-25. The prosecutor contended that he thought the order excluded references to the defendants' gang membership, but not references to the victims' gang membership. *Id.* at 225:17-22.

After clarifying that the *in limine* ruling extended to evidence of the victims' gang

4
Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

membership as well, the prosecutor admitted his mistake, and asked the state trial court judge to admonish the jury. *Id.* at 228:3-6. The state trial court judge then denied defendants' motion for a mistrial, stating "I do believe from what has been expressed . . . that [the prosecutor's] statement in opening was not an intentional violation of the Court order." *Id.* at 235:1-3. The state trial court judge then explained: "I will admonish the jury when they come back once again that statements by the attorneys and certainly opening statements is [sic] not evidence . . . ." *Id.* at 235:11-13.

When the jury returned the courtroom, the state trial court judge stated: "Folks, I wanted to remind you what I mentioned to you at the outset here during the original instructions that I gave to you. . . . . Opening statements are not evidence, neither is the argument." *Id.* at 237:1-5. Before the jury began its deliberations, the state trial court judge again instructed the jury that "[s]tatements made by the attorneys during the trial are not evidence." *Hedlin*, 2010 WL 5384268 at *9 n.7.

### B. Court of Appeal Order

On direct appeal, the California Court of Appeal, First Appellate District, affirmed the judgment of conviction. *Hedlin*, 2010 WL 5384268, at *1. Petitioner raised both the *Batson/Wheeler* issue and the gang membership issue on direct appeal. *Id.*

As to Petitioner's *Batson/Wheeler* challenge, the California Court of Appeal noted that its review of the state trial court's denial of a *Batson/Wheeler* motion was deferential, as the state trial court's findings largely turn on an evaluation of credibility—a task uniquely in the province of the trial judge. *Hedlin*, 2010 WL 5384268, at *7. The Court of Appeal found that:

> It is not implausible the prosecutor would harbor an honest concern that [Mr. Parker], a person who counsels inmates and who admitted he would 'prefer not to' cast a guilty verdict, might be sympathetic to appellants. It is also not implausible that a prosecutor would think that [Ms. Walker], who empathizes with people for a living, and who has extensive experience with the criminal justice system—including family members who had been killed and others who had been convicted, perhaps wrongfully—would be unfavorable to the prosecution's case. The prosecutor here had a legitimate, nondiscriminatory reason for excluding [Mr. Parker] and [Ms. Walker]: he believed they would be unfavorable to the People's case. Deferring, as we must, to the lower court's determination, we conclude substantial evidence supports the finding that the

5
Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

United States District Court
Northern District of California

>prosecutor's peremptory challenges of [Mr. Parker] and [Ms. Walker] were not motivated by discriminatory intent.

*Id.*

As to the mistrial motion, the Court of Appeal upheld the trial court's denial of the motion, noting that the prosecutor's behavior "did not constitute an egregious pattern of misconduct and did not infect the trial with unfairness"—the standard for a due process violation. *Id*. at *8. Even assuming that the remarks constituted "deceptive or reprehensible methods," the Court of Appeal found that "there is not a reasonable likelihood that the jury applied the prosecutor's inadvertent remarks 'in an objectionable fashion,' particularly where the court instructed the jury on three separate occasions that it could use only the evidence presented in the courtroom . . . and that nothing the attorneys said was evidence." *Id.*

The Court of Appeal noted that it was unlikely that the prosecutor's statements were "devastating" to Petitioner's case or "so prejudicial as to establish a reasonable probability of a favorable outcome absent the inadmissible evidence." *Id.* at *10. Instead, the Court of Appeal noted, what was devastating to Petitioner's case was the weight of the evidence against the Petitioner. *Id.*

**C.  Procedural Background**

Following the direct appeal of his conviction, Petitioner filed in the California Supreme Court a petition for review, which was denied. ECF No. 14-10, Exh. J (Denial of Petition).

On November 1, 2013, Petitioner filed a petition for writ of habeas corpus in this Court. ECF No. 1. The Court issued an order to show cause. ECF No. 2. Respondents submitted an answer, ECF No. 5 ("Resp."), and Petitioner filed a traverse, ECF No. 15 ("Trav.").

Respondents concede that Petitioner has exhausted state remedies under 28 U.S.C. § 2254(c) for the claims contained in this petition. Resp. 3.

**II. STANDARD OF REVIEW**

The petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. Under AEDPA, a district court may not grant a writ of habeas corpus unless the state court's adjudication of the claim:

6

Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In determining whether a petitioner is entitled to relief under this provision, a federal court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

The "contrary to" and "unreasonable application" prongs of section 2254(d)(1) have separate and distinct meanings. *See Williams v. Taylor*, 529 U.S. 362, 404 (2000). A state court's decision is "contrary to" clearly established U.S. Supreme Court law if that decision fails to apply the correct controlling authority or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *Id.* at 412-13. A decision is an "unreasonable application" of U.S. Supreme Court law if "the state court identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Importantly, "'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410). A state court's determination that a claim lacks merit is not unreasonable "so long as 'fairminded jurists could disagree' on [its] correctness." *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The petitioner bears the burden of showing that the state court decision involved an error "well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

To find under section 2254(d)(2) that a state court's decision was based on "an unreasonable determination of the facts," a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court." *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 710 (2014). In other words, "a state-court factual determination is not unreasonable merely because the federal habeas court

7

Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

would have reached a different conclusion in the first instance." *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (internal quotation marks omitted). That said, "where the state courts plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering the resulting factual finding unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

## III. DISCUSSION

### A. *Batson/Wheeler* Violation

Petitioner contends his conviction and sentence should be set aside because the prosecution impermissibly used peremptory challenges to strike an African American man, Mr. Parker, and an African American woman, Ms. Walker, from the jury in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986), and *People v. Wheeler*, 22 Cal. 3d 258 (1978). Pet. at 13.

**1. Legal Standard**

*Batson* promulgates a three-step process for evaluating the propriety of a preemptory challenge. *Rice v. Collins*, 546 U.S. 333, 338 (2006). First, where the defendant objects to the prosecution's use of peremptory strikes, the defendant must make a prima facie showing that the prosecutor exercised a peremptory challenge based on race. *Id.* Second, if this showing is made, the burden shifts to the prosecutor to offer a race-neutral explanation for the challenge. *Id.* Third, the trial court determines whether the defendant has carried his burden of proving purposeful discrimination by evaluating "the persuasiveness of the justification" given by the prosecutor. *Id.* (internal quotation marks omitted).

At this third step, the trial judge makes a credibility determination as to the persuasiveness of the prosecutor's justifications. *Jamerson v. Runnels*, 713 F.3d 1218, 1224 (9th Cir. 2013). Under *Batson*, the prosecutor's reasons for the strike need not be sound or objectively reasonable; there is no *Batson* violation so long as the trial judge determines that the prosecutor struck the juror based on genuinely held, non-discriminatory reasons. *Purkett v. Elem*, 514 U.S. 765, 769 (1995).

8

Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Because a *Batson* challenge is premised on discriminatory intent, a *Batson* challenge "largely will turn on an evaluation of credibility." *Jamerson*, 713 F.3d at 1225 (citing *Hernandez v. New York*, 500 U.S. 352, 365 (1991)). "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Jamerson*, 713 F.3d at 1225. Therefore, in evaluating habeas petitions premised on a *Batson* violation, "our standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that a state trial court's credibility determination was supported by substantial evidence, we must uphold it." *Jamerson*, 713 F.3d at 1225. (citing *Rice*, 546 U.S. at 338-42).

Petitioner contends that under 28 U.S.C. § 2254(d)(2), the Court of Appeal was objectively unreasonable in concluding that the "trial court's credibility determination" at *Batson*'s third step "was supported by substantial evidence." *Jamerson*, 713 F.3d at 1225. (citing *Rice*, 546 U.S. at 338-42). Petitioner does not challenge the applicability of the *Batson* framework, nor does Petitioner allege that in applying the *Batson* framework, the state trial court or the California Court of Appeal acted contrary to clearly established federal law under 28 U.S.C. § 2254(d)(1).

**2. Application**

At the first two steps of the *Batson* process, the state trial court judge found that the defendants had made a prima facie showing of racial discrimination, and asked the prosecutor to justify striking Mr. Parker and Ms. Walker.

The prosecutor alleged that he struck Mr. Parker because he was a priest in the business of saving souls—particularly criminals. As noted by the state trial court judge, Mr. Parker was a minister who counseled prisoners in the San Francisco jail system as a volunteer. Petitioner contends that "[j]ust as Ms. Walker's dismissal was shown to be on racial grounds, so is Rev. Parker's and no further need be shown." *Id.* The Court of Appeal affirmed the state trial court judge's denial of the *Batson/Wheeler* motion, finding:

> During jury selection, [Mr. Parker] stated he is a minister. He stated he could be fair and impartial because he viewed inmates as the same as "everybody else." Hearing about the charges against Shawn did not affect [Mr. Parker] because he was involved with people in the criminal justice system: each week, he led a "church meeting"

9
Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

> with inmates in the San Francisco County jail. [Mr. Parker] first began ministering to inmates in Chicago, where he encouraged inmates in a maximum security jail to listen "to the gospel."
>
> [Mr. Parker] stated he does not judge the prisoners he comes into contact with because "we are all guilty of sin." When asked whether he would be able to cast a guilty verdict if the prosecutor satisfied his burden of proof, [Mr. Parker] stated, "Yes . . . I prefer not to, but I won't let that get in the way because . . . that's part of life. . . . Once again, I prefer not to." [Mr. Parker] explained that he would rather not "be here," but also stated that he did not think his call to minister to inmates would "get in the way" of serving as a juror. The prosecutor excused [Mr. Parker].

*Hedlin*, 2010 WL 5384268 at *5 (footnote omitted).

The prosecutor contended that he struck Ms. Walker because (1) she was "touched by the criminal justice system"; (2) she may have sympathy for the defendants because she was in the business of helping people; and (3) she lived in a gang infested neighborhood where police were challenged every day. As the Court of Appeal found in affirming the state trial court judge's denial of the *Batson*/*Wheeler* motion:

> [Ms. Walker] grew up in the Bay View Hunters Point neighborhood of San Francisco. She now lives in San Mateo, where she works as a behavioral counselor with children and young adults with severe mental disabilities. She has several cousins who were convicted of attempted murder and murder in "shooting cases" in San Francisco and Contra Costa counties. She did not attend the court proceedings, however, or follow those cases. [Ms. Walker's] uncle was in prison for over 12 years "for something he didn't do and that got overturned."
>
> Two of [Ms. Walker's] family members were murdered but she did not attend their funerals. Her uncle is a correctional officer and at least one of her aunts works at San Francisco's Hall of Justice "enter[ing] warrants in the system." [Ms. Walker] stated that nothing would impair her ability to be fair and impartial and that she would be able to say "no" to the prosecution if the prosecutor did not prove the case beyond a reasonable doubt. [Ms. Walker] stated she would not be affected by evidence about gangs or murder and would not have a problem if one of the defendants had tattoos or a felony conviction. She also said she did not disagree with the right to use deadly force in self-defense. The prosecutor excused [Ms. Walker].

*Hedlin*, 2010 WL 5384268 at *5.

Petitioner alleges that the prosecutor's rationales for striking Ms. Walker are "irrelevant arguments." Pet. 15. Petitioner contends that the prosecutor failed to consider that Ms. Walker had

10
Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

1 relatives in law enforcement jobs and that Ms. Walker's connection with her "crime related

2 relatives" was at best, minimal. *Id.* at 15-16. According to Petitioner's interpretation of these facts,

3 "it is already clear that Ms. Walker would be 'pro-police' and seems to dislike gangs and

4 violence." *Id.* at 16. Thus, Petitioner concludes that the prosecution's "only motive to excuse [Ms.

5 Walker] *must* be racial." *Id*. at 16 (emphasis added).

6       At the third step of the *Batson* process, the state trial court judge found that the prosecutor

7 did not strike the jurors based on racial discrimination. The state trial court judge began by noting

8 that the attorneys had appeared before him for at least fifteen years and that he held all the

9 attorneys before him in "high esteem." Transcript at 345:23-346:3. The state trial court judge

10 noted that he did "not for a moment believe" that the prosecutor harbored improper motives for

11 excluding the jurors. *Id.* He accepted the prosecutor's reasons for excusing both prospective jurors

12 given the "bevy of reasons why" both the prosecution and the defense could have excused the

13 jurors. *Id*. at 346:10-11. The Court of Appeal, in affirming the conviction, further noted:

> It is not implausible the prosecutor would harbor an honest concern that [Mr. Parker], a person who counsels inmates and who admitted he would 'prefer not to' cast a guilty verdict, might be sympathetic to [defendants]. It is also not implausible that a prosecutor would think that [Ms. Walker], who empathizes with people for a living, and who has extensive experience with the criminal justice system—including family members who had been killed and others who had been convicted, perhaps wrongfully—would be unfavorable to the prosecution's case. The prosecutor here had a legitimate, nondiscriminatory reason for excluding [Mr. Parker] and [Ms. Walker]: he believed they would be unfavorable to the People's case. Deferring, as we must, to the lower court's determination, we conclude substantial evidence supports the finding that the prosecutor's peremptory challenges of [Mr. Parker] and [Ms. Walker] were not motivated by discriminatory intent."

22 *Hedlin*, 2010 WL 5384268, at *7.

23       Petitioner does not point to any evidence in the record to undermine the Court of Appeal's

24 decision as "unreasonable." 28 U.S.C. § 2254(d)(2). Instead, Petitioner merely contends that there

25 was some evidence that the excluded jurors could have been favorable to the prosecution. Pet. 16.

26 However, even if this Court were to agree with Petitioner's self-serving interpretation of the facts,

27 "a state-court factual determination is not unreasonable merely because the federal habeas court

11

would have reached a different conclusion in the first instance." *Titlow*, 134 S. Ct. at 15. Even viewing the facts in Petitioner's favor, the Court cannot conclude that it is "clear" that the prosecutor's "only motive" for excluding Ms. Walker "must" be racial. *See Hurles*, 752 F.3d at 778 (holding that a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record before the state court"). Rather, "[r]easonable minds reviewing the record might disagree about the prosecutor's credibility," and on habeas review, "that does not supersede the trial court's credibility determination." *Rice*, 546 U.S. at 341-42. Thus, the Court concludes that the Court of Appeal was not unreasonable in concluding that the state trial court judge's credibility determination was supported by substantial evidence. Accordingly, the Court denies habeas relief on this claim.

**B. Prosecutorial Misconduct**

As a separate basis for relief, Petitioner argues that his conviction and sentence should be set aside because the prosecutor's reference to the victims' gang involvement during opening statements undermined Petitioner's right to a fundamentally fair trial. Pet. 17.[1] Petitioner contends that the misconduct was grave, and that the state trial court judge's admonishment to the jury that opening statements are not evidence "only highlights the issue to the jury." *Id.* Thus, according to Petitioner, "[c]learly, the proper course would have been to grant a mistrial." *Id.* Petitioner contends that "the District Attorney's actions has [sic] the effect of denying Petitioner his rights guaranteed by the Sixth and Fourteenth Amendments for a meaningful opportunity to defend himself." *Id.*

The Court of Appeal held that Petitioner's motion for a mistrial was not warranted. As

---

[1] Petitioner's brother, Brian Hedlin, in his own habeas petition in U.S. District Court, also claimed that he was denied a fair trial because the prosecutor engaged in prosecutorial misconduct by introducing gang evidence in violation of the state trial court's *in limine* rulings. In denying Brian's petition, U.S. District Judge Richard Seeborg noted that "[j]uries are presumed to follow a court's limiting instructions" absent extreme circumstances, and that Brian had failed to demonstrate that the prosecutor's "brief reference to gang involvement" was "sufficient to constitute such an extreme circumstance." *Hedlin v. Lewis*, 2014 WL 923331, at *6 (N.D. Cal. Mar. 5, 2014).

discussed below, the Court finds that the Court of Appeal's ruling was neither contrary to, nor involved an unreasonable application of, clearly established law. Nor was the ruling based on an unreasonable determination of the facts.

### 1. Legal Standard

To successfully claim a due process violation on the basis of prosecutorial misconduct, "the relevant question is whether the prosecutor['s] comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Because the question is "the narrow one of due process, and not the broad exercise of supervisory power," it "is not enough that the prosecutor['s] remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 180-81.

In evaluating whether the prosecutors comments infected the trial with unfairness, "it is appropriate to consider whether the jury was instructed to decide solely on the basis of the evidence rather than the counsel's arguments, and whether the state's case was strong." *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999) (citing *Darden*, 477 U.S. at 182). The U.S. Supreme Court has noted that there is an "almost invariable assumption of the law that jurors follow [court] instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). However, the U.S. Supreme Court has also recognized that in some exceptional circumstances, "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. United States*, 391 U.S. 123, 135 (1968).

### 2. Application

The Court finds that the Court of Appeal's conclusion is not contrary to, or an unreasonable application of, clearly established federal law, nor is the Court of Appeal's decision based on an unreasonable determination of the facts.

In this case, the Court of Appeal found the state trial court did not abuse its discretion by denying Petitioner's motion for a mistrial. First, the Court of Appeal noted that "[w]hile [the

13

prosecutor's improper remarks] violated the [state trial] court's June 2007 order, they did not constitute an egregious pattern of misconduct and did not infect the trial with unfairness." *Hedlin*, 2010 WL 5384268, at *9 (internal quotation marks omitted). Second, because the state trial court expressly instructed the jury on three separate occasions to disregard the prosecutor's improper statements, the Court of Appeal found that "there is not a reasonable likelihood that the jury applied the prosecutor's inadvertent remarks 'in an objectionable fashion.'" *Id.* Third, the Court of Appeal noted that the state's evidence was particularly strong—indeed, "devastating" to Petitioner's case. *Id.* at *10

The standard for finding a due process violation based on prosecutorial misconduct is high. For example, in *Darden*, the prosecutor suggested that the only way to prevent future crimes was to impose the death penalty on the defendant, referred to the defendant as "an animal," and suggested multiple times that the defendant's death would be a benefit to society. 477 U.S. at 180.[2] Nonetheless, the U.S. Supreme Court found that even though the prosecutor's conduct was objectionable, the petitioner was not deprived of a fair trial because the trial court instructed jurors several times to disregard the counsel's improper statements, and because the weight of the evidence against the petitioner was heavy. *Id.* at 182. The U.S. Supreme Court found that the trial court judge's instructions to the jurors and the strength of the evidence against the defendant "reduced the likelihood that the jury's decision was influenced by the [improper] argument." *Id.*

Similarly, here, the Court of Appeal found that any potential impact the prosecutor's improper statements could have had on the jury was sufficiently mitigated by the state trial court judge's instructions and the "devastating" evidence against the defendant. *Hedlin*, 2010 WL 5384268, at *9. Juries are presumed to follow a court's limiting instructions. *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997) (citing *Richardson*, 481 U.S. at 211); *see also Greer v. Miller*,

---

[2] Specifically, the prosecutor stated: "I will ask you to advise the Court to give him death. That's the only way that I know that he is not going to get out on the public. It's the only way I know." *Id.* at 180 n.10. The prosecutor further stated: "He shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash," "I wish someone had walked in the back door and blown [the defendant's] head off," and "I wish [the defendant] had been killed in the accident, but he wasn't. Again, we are unlucky that time." *Id.* at 180 n.12.

1  483 U.S. 756, 766 n.8 (1987) (holding that courts generally "presume that a jury will follow an instruction" unless there is an "'overwhelming probability' that the jury will be unable to follow the court's instructions" and a "strong likelihood that the effect of the evidence would be 'devastating' to the defendant").

Petitioner does not present any argument as to why the jury would have been unable to follow the state trial court's instructions. Nor does the Petitioner present any argument as to why it was unreasonable for the Court of Appeal to find that the weight of evidence against the defendant was "devastating." Rather, Petitioner rests his argument on the conclusory allegation that "[t]he admonishment given failed to address the problem." Pet. 17. Under AEDPA, the Court cannot grant habeas relief on such a conclusory allegation.

## IV. CONCLUSION

For the reasons stated above, Petitioner's writ of habeas corpus is DENIED WITH PREJUDICE. No certificate of appealability shall issue, as Petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall enter judgment against the Petitioner and in favor of the Respondent. The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: August 6, 2015

_____
LUCY H. KOH
United States District Judge

15
Case No. 13-CV-05128-LHK
ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS